[Civ. No. 7697. First Appellate District, Division One.—August 13, 1931.]

W. A. JONES, Appellant, v. JOHN B. FOSTER, Respondent.

Charles M. Easton and Clarke & Bowker for Appellant.

W. I. Gilbert, Stanwick & Donnelly and R. W. Proudfit for Respondent.

MURPHEY, J., *pro tem.*—This is an action in which the plaintiff, the assignee of Mrs. N. E. McCann, alleges that on or about the 2d of March, 1926, the defendant entered into a contract with said Mrs. McCann by the terms of which he agreed to give to her the exclusive agency for selling certain property and to pay her the regular commission allowed to relators on sales and, in addition thereto, to pay two and a half per cent as consideration for certain services thereto-

fore performed by Mrs. McCann in procuring the sale of said property to the defendant from the former owners thereof. This service it was alleged was performed by Mrs. McCann in securing the property from the former owners at the lowest net market price, which she alleges she succeeded in doing, waiving her commission on said sale. The complaint further alleges that on or about the said second day of March, 1926, Mrs. McCann became the exclusive agent of defendant for the sale of said property, and pursuant thereto proceeded in due course at divers times to secure a purchaser or purchasers for said ranch property for the defendant at an advanced price over the purchase price, and that during that time she proceeded, as said exclusive agent, to negotiate with various parties with respect to the sale of said property, and to interest certain persons in the purchase of said property, and that thereafter in due course the defendant Foster completed the sale of said property to certain persons at a price materially in advance of the purchase price paid by him to the former owners, to wit, the sum of approximately $185,000. In support of her complaint, the plaintiff offered in evidence the following memorandum: "I agree to give Mrs. N. E. McCann exclusive agency on the Stockwell Ranch property also the Vitagliano property as follows 59 Acres and 40 acres—on Riverside Drive and Pocoima Lankershim Calif I am to pay her 2½ per cent on Sale of Said property if a deal is made—John B. Foster March 2-1926." No other writing of any kind or character was executed by either of the parties in connection with this transaction. In addition to the memorandum above set out, plaintiff offered parol evidence to the effect that she was to receive full commission as exclusive agent on the sale of said property purchased by Foster and, in addition thereto, two and one-half per cent in consideration of her services on the sale of said property to Foster by the former owner. The court sustained the objection to the introduction of this parol evidence on the ground that the agreement upon its face imports to be a complete expression between the parties and that the parol evidence is not admissible to vary its terms.

The court further found that Mrs. McCann, the assignor of appellant, was not the procuring cause of the sale and, therefor, was not entitled to any commission on the

sale by Foster to Beesemeyer. This ruling was clearly correct and supported by an unbroken line of authorities. If there was any other agreement between the parties with respect to the payment of commissions, the time and place to evidence that agreement was in the writing providing for her compensation. In *Thoroman* v. *David*, 199 Cal. 386, 389 [249 Pac. 513, 514], the court says: "It is the contention of the plaintiff that the said escrow instructions did not constitute such a written contract as expressed the complete understanding of the parties and that the oral evidence was admissible to supplement the written expression of their understanding. It is the position of the defendant that the said agreement was complete and fully expressed the intention of the parties and that the admission of the oral evidence was in contravention of the well-established rule codified in sections 1625 and 1698 of the Civil Code and in section 1856 of the Code of Civil Procedure, and as approved in such cases as *Harrison* v. *McCormick*, 89 Cal. 327 [23 Am. St. Rep. 469, 26 Pac. 830]," and several other cases cited in that decision. "In the Harrison case the rule is thus stated: 'The question whether a writing is upon its face a complete expression of the agreement of the parties is one of law for the court, and the rule which governs the court in its determination has been well stated as follows: "If it imports upon its face to be a complete expression of the whole agreement—that is, shows such language as imports a complete legal obligation—it is to be presumed that the parties have introduced into it every material item and term; and parol evidence cannot be admitted to add another term to the agreement, although the writing contains nothing whatever on the particular one to which the parol evidence is directed." ' " To the same effect *Bradbury* v. *Higginson*, 167 Cal. 553, 558 [140 Pac. 254, 256], wherein the court says: "The defendant relies upon section 1640 of the Civil Code, providing that 'when through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded'. . . . Whatever may be the real scope of this enactment, it certainly cannot have the effect of authorizing a court, in the absence of a showing of a right of reformation, to find, upon oral testimony, that a written contract in-

cludes provisions which do not appear upon its face, and to enforce such provisions as a part of the written contract. This would not be an interpretation of the contract. It would be altering a written contract by proof of the parol agreement of the parties, a procedure which is contrary to the most elementary principles governing the effect of written instruments.''

It must be remembered in this case that at the time this written memorandum of exclusive agency was signed, the escrow instructions whereby Foster agreed to purchase the property from the former owners, has already been signed and deposited, and he made appellant's assignor his exclusive agent to sell this property, and agreed to pay two and one-half per cent commission on the *sale* price of that property if the deal was made. This language could not be made to refer to some antecedent sale of the property without rewriting the entire agreement.

It is appellant's contention that the agreement is not clear as to the word ''deal'', contending that just what ''deal'' was referred to in the memorandum is uncertain, and that the deal actually referred to was the deal whereby respondent agreed to purchase the property. Defendant having already signed the agreement to purchase the property from the former owners, the only uncompleted deal for the sale of the property was a contemplated deal to be consummated at some future time, and this we are satisfied is the only rational construction that can be placed on the language used in the memorandum.

It was conceded in this action that the defendant himself consummated the sale of the property with Gilbert Beesemeyer as purchaser, and there was some contention at the time of the trial of this action, and we think from the language of the complaint, that it was the plaintiff's thought the crux of the action was that Mrs. McCann, as exclusive agent, was entitled to the commission under the agreement if a sale was made either by herself or by the defendant at a price in advance of the original purchase price of the property by the defendant from the former owner. In this court this position has been abandoned by the plaintiff, for we find in his reply brief this statement: ''We have no quarrel with counsel as to the right of an owner to sell the property himself, notwithstanding the fact that he has an

exclusive agent, without becoming liable for the payment of a commission.'' There is no question as to this being a sound proposition of law. (*Snook* v. *Page*, 29 Cal. App. 246 [155 Pac. 107]; *Faith* v. *Meisetschlager*, 45 Cal. App. 7 [187 Pac. 61].)

 The sole question then remaining to be determined is as to whether the assignor of the plaintiff was the procuring cause of the sale from respondent to Beesemeyer. The respondent objected to any introduction of any testimony tending to show that Mrs. McCann had procured Beesemeyer, to whom respondent sold the property, on the ground that the allegations of plaintiff's complaint in this respect were insufficient. While there can be slight doubt that the complaint is vulnerable to this attack, nevertheless we do not deem it necessary in the determination of this controversy to enter into any discussion of that question. We are entirely satisfied that the evidence, contradictory though it may be in some respects, falls far short of establishing the right of plaintiff to recover on the theory that his assignor was the procuring cause of this sale. The fundamental law with respect to this matter is summarized in the following: '' 'The duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until this is done, his right to commissions does not accrue.' (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 382 [38 Am. Rep. 441].) . . . If he failed to do that, he is not entitled to the commission, even though he made efforts to sell the property, and first called to it the attention of the party who subsequently made the purchase, . . . '' (*Zeimer* v. *Antisell*, 75 Cal. 509, 512 [17 Pac. 642, 643].) ''It is not enough that he contribute indirectly or incidentally to the sale by imparting information which tends to arouse interest, but it is sufficient if it be established that he set in motion a chain of events which without break in their continuity caused the buyer and seller to come to terms; that his efforts constituted the proximate cause of the meetings of the minds of the principals; . . . (*Sessions* v. *Pacific Improvement Co.*, 57 Cal. App. 1 [206 Pac. 653], . . . ; *Sargent* v. *Ullsperger*, 54 Cal. App. 384 [201 Pac. 934] . . . ) It is necessary for the broker to prove, therefore, that he was the efficient or procuring cause of the sale; in other

words, it must appear that his efforts had to do with the meeting of the minds of the seller and buyer. . . . In any event the question of whether or not the sale is primarily the result of the broker's efforts is one of fact, and the trial court's conclusions thereon will not be disturbed on appeal if there be substantial evidence to sustain them. (*Sessions* v. *Pacific Imp. Co., supra.*)'' (*Bail* v. *Glantz,* 78 Cal. App. 49, 53 [248 Pac. 258, 259].) The evidence on this issue may hardly be said to be contradictory as to the ultimate fact with respect to the purchase of the property by Beesemeyer from the defendant. Beesemeyer himself testified that he never did meet the assignor of plaintiff in connection with this transaction, never discussed the matter with her and did not know her in the deal at all. Under such circumstances we may not disturb the findings of the trial court.

The motion for a new trial was properly denied. In *O'Rourke* v. *Vennekohl,* 104 Cal. 254, 256 [37 Pac. 930], the rule, succinctly stated, is clearly applicable to the facts of this case: ''After a careful examination of the record we are unable to say that the court erred in denying the motion for a new trial. The motion was based upon the ground of newly discovered evidence. The granting of a new trial upon this ground is largely matter of discretion, an exercise of which will not be disturbed by this court except in a case of abuse clearly disclosed by the record. It should not be granted in any case where the party has not shown due diligence in discovering and producing the evidence, nor where the evidence is purely cumulative, nor unless the newly discovered evidence is such as to render a different result upon a retrial probable. Testing the showing made in this case by these rules, we certainly cannot say that there was any abuse of discretion in denying the motion. The new evidence was largely, if not entirely, cumulative, and conceding that appellants' view of the law be correct, that a new trial should not be refused merely because the evidence is cumulative in a case where the cumulation is sufficiently strong to render a different result probable, we cannot say that the record presents such a case.''

It follows that the judgment should be affirmed, and it is so ordered.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 12, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 8, 1931.